IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

MISSOULA DIVISION

FILED
MAR 14 2013
Clerk, U.S District Court
District Of Montana
Missoula

| | |
|---|---|
| RAYMOND EARL EVERT,<br><br>Petitioner,<br><br>vs.<br><br>WARDEN MARTIN FRINK;<br>ATTORNEY GENERAL OF THE<br>STATE OF MONTANA,<br><br>Respondents. | Cause No. CV 12-00015-M-JCL<br><br><br><br>ORDER |

On July 29, 2011, Petitioner Raymond Earl Evert filed this action seeking a writ of habeas corpus under 28 U.S.C. § 2254 challenging the revocation of his probation in November 2010. Evert is a state prisoner proceeding pro se. The petition will be denied.

By way of background, the Court conducted a preliminary screening of Evert's Petition pursuant to Rule 4 of the Rules Governing § 2254 Cases and required Respondents ("the State") to file exhibits from the state trial and appellate court proceedings. (Dkt. 12). Following a screening of the Petition in light of these exhibits, the State was required to file an Answer to the Petition. (Dkt. 20). The State's Answer was filed on November 19, 2012. (Dkt. 21).

1

Based on the parties' written consent to magistrate judge jurisdiction, the matter was reassigned to the undersigned on December 19, 2012. (Dkt. 24: Clerk's Notice; Dkt. 24-1: Consents).

## I. Overview

In 1997, Evert plead guilty to the sexual assault of his 14-year-old neighbor and was sentenced to 65 years in prison with 15 years suspended by State District Court Judge Lympus in the Eleventh Judicial District Court, Flathead County. (Dkt. 16-2– Judgment and Sentence, p. 2). On August 2, 2007, Evert's application for review of that sentence was heard by the Sentence Review Division of the Montana Supreme Court and Evert's sentence was amended to 60 years in the Montana State Prison, with 35 years suspended. (Dkt. 16-5: Amended Judgment and Commitment dated September 4, 2007).

On June 28, 2009, Evert was released to community supervision to serve 35 years of probation. (Dkt. 16-8, p. 7: Probation & Parole letter to Evert). Evert was arrested for probation violations on July 26, 2010. (Dkt. 1-1, p. 1). On August 4, 2010, a Report of Violation was filed with the sentencing court in Flathead County. (Dkt. 16-9, p. 1). A Petition for Revocation of the Suspended Sentence was filed on August 11, 2010. (Dkt. 16-10, p. 1). On November 17, 2010, Evert appeared with counsel, Glen Neier, for a revocation hearing. Evert's

probation officer, Janet Haas, testified by telephone at the hearing regarding Evert's alleged violations. During her testimony Haas made statements attributed to Evert's former girlfriend, Mary Flint. Ms. Flint did not testify at the revocation hearing. At the conclusion of the hearing, Evert's probation was revoked and he was sentenced to 35 years in prison. (Dkt. 1: Petition, p. 2, ¶¶ 1-4; Dkt. 16-7: Amended Order of Revocation; *Evert v. Montana Dep't of Corrections*, No. OP 11-0594 (Mont. Dec. 27, 2011)).

Evert filed a Notice of Appeal with the Montana Supreme Court regarding the November 2010 revocation, but his appellate counsel advised him she could find no appealable issues. (Dkt. 1-2: Letter of Apr. 18, 2011, p. 1). Evert moved to dismiss the appeal before filing a brief and his motion was granted on May 9, 2011. *State v. Evert*, No. DA 11-0069 (Mont. filed Feb. 4, 2011).

On October 6, 2011, Evert filed a petition for writ of habeas corpus in the Montana Supreme Court. The petition was dismissed pursuant to an independent state procedural rule. *Evert v. Montana Dep't of Corrections*, No. OP 11-0594 (Mont. Dec. 27, 2011) (citing Mont. Code Ann. §§ 46-20-104, -22-101(2)).

## II. Allegations

In his original petition, Evert alleged that:

Neier refused to subpoena Mary Flint to Court. Neier refused to

3

> bring up the fact that I didn't receive a revocation hearing or any other kind of hearing within 72 hours by law. Neier refused to bring up the fact that there was nothing in my court judgment about viewing pornography. It was never stated at any time that I was not allowed to. Neier didn't argue the fact of hearsay allegation in Flint's statement that was used against me. . . .

(Dkt. 1: Petition, p. 4 ¶ 15A(1)).

The second claim in the original petition alleges:

> Neier refused me my due process, and I have this right to a fair hearing. I was refused my constitutional right to cross-examine Mary Flint and Janet Haas so the record could have been set straight.

*Id.* ¶ 15B(1).

In the supplement to his petition filed on February 10, 2012, Evert alleges that he was denied a preliminary hearing within 72 hours of his detention, did not receive a notice of intent to revoke within ten days after that, and did not see a judge within 90 days. He also alleges that state law and standard procedures were not followed. (Dkt. 7: Supplemental Petition, pp. 1-2 ¶¶ 1-2, 3 ¶ 7, 4 ¶¶ 11-13). He further alleges that alternatives to imprisonment were not considered, *id.* at p. 2 ¶ 3, 3 ¶ 8, 4 ¶ 14; that there was "'NO' violation of any kind in any way," *id.* at p. 2 ¶ 3; that he was not permitted to cross-examine the witnesses against him, *id.* ¶ 4; that hearsay was used against him, *id.* ¶ 5; that his probation officer "participated in the gathering of the evidence forming the basis of [the]

4

revocation," *id.* at 3 ¶ 6; that "things that happened over ten years ago" were used against him, *id.* at 3 ¶ 9; and that he was "never given the opportunity to review the procedures or ask any kind of questions," *id.* at 3 ¶ 10.

The Court has considered both Evert's original petition (Dkt. 1) and supplement (Dkt. 7) and construed two categories of claims. First, Evert asserts due process violations alleging he was denied a number of procedural safeguards during his revocation proceedings. Secondly, Evert asserts ineffective assistance of counsel claims.[1]

### III. Analysis

#### A. Procedural default

Evert failed to exhaust his various claims. "A habeas petitioner must present his claims to the state's highest court in order to satisfy the exhaustion requirement of 28 U.S.C. § 2254(b)(1) and (c)." *Zichko v. Idaho*, 247 F.3d 1015, 1022 (9th Cir. 2001). Although Evert filed an appeal with the Montana Supreme Court it was dismissed prior to a decision on the merits. Evert did not file a petition for post-conviction relief. He did file a habeas petition with the Montana Supreme Court raising many of the claims raised here, but that petition was denied

---

[1] Although Evert alleges he was denied his right to cross examine Mary Flint and Janet Haas, that claim will be considered in conjunction with his ineffective assistance of claim.

by the Montana Supreme Court on an independent state procedural ground. *Bennett v. Mueller*, 322 F.3d 573, 580 (9th Cir. 2003) ("the application of the state procedural rule must provide an adequate and independent state law basis on which the state court can deny relief.").

Evert's failure to properly present these claims to the Montana Supreme Court has resulted in a procedural default of those claims. *Zichko*, 247 F.3d at 1022. Generally, "[i]f the court finds an independent and adequate state procedural ground 'federal habeas review is barred unless the prisoner can demonstrate cause for the procedural default and actual prejudice, or [can] demonstrate that the failure to consider the claims will result in a fundamental miscarriage of justice.'" *Bennett*, 322 F.3d at 580 (*quoting Noltie v. Peterson*, 9 F.3d 802, 804–05 (9th Cir. 1993)). Here, it is unnecessary to give Evert an opportunity to demonstrate cause and prejudice because, "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2). Evert's claims fail on the merits.

**B. Procedural Due Process**

Although a probationer facing revocation of his conditional liberty is entitled to due process, he is not entitled to the same due process that would be

6

required at a criminal trial. Under the United States Constitution, he is entitled to:

> (a) written notice of the claimed violations of probation or parole; (b) disclosure to the probationer or parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a neutral and detached hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking probation or parole.

*Gagnon v. Scarpelli*, 411 U.S. 778, 786 (1973) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 489 (1972)) (internal parentheses and quotation marks omitted).

*Morrissey* specifically sets forth the need for a preliminary hearing before an independent hearing officer to determine whether probable cause exists to believe that the parolee has violated the conditions of his parole. Once probable cause is found, a formal hearing is required to evaluate the alleged violations and to decide whether the evidence warrants revocation. *Morrissey*, 408 U.S. at 486-88.

Evert raises a number of claims regarding the timeliness of the revocation proceedings. Evert was arrested on July 26, 2010, a report of violation was prepared on August 4, 2010, a Petition for revocation of the probationary sentence was filed on August 11, 2010, and a bench warrant was issued that day. (Dkt. 16-

9, 16-11). Evert made an initial appearance on August 23, 2010 and bond was set at $50,000. (Dkt. 16-15). A hearing was held on September 9, 2010 and Evert appeared with his attorney Glen Neier. Evert indicated at that time that he had sufficient time to confer with counsel regarding the petition and report of violation and he denied the allegations contained therein. (Dkt. 16-18, Dkt. 16-19: September 9, 2010 transcript p. 5, lines 6-16; p. 6, lines 10-17). On October 12, 2010, Evert's counsel filed a motion to continue the revocation hearing. (Dkt. 16-21). That motion was granted and the hearing was ultimately held on November 17, 2010. Dkt. 16-22, 16-23.

Evert's timeliness arguments fail as a matter of law. A delay in an initial preliminary hearing could potentially raise due process concerns. *Morrissey*, 408 U.S. 471; *Gerstein v. Pugh*, 420 U.S. 103, 125 (1975) (an initial judicial determination of probable cause is required "before or promptly after arrest"). But, there is no specific authority that sets forth an exact time in which a preliminary hearing must be held. Regardless, this Court need not decide how long is too long, as Evert has not demonstrated any prejudice.

"[A] due process violation occurs only when [the parolee] establishes" that the delay "'was both unreasonable and prejudicial.'" *Vargas v. United States Parole Comm'n*, 865 F.2d 191, 194 (9th Cir. 1988) (*quoting Sutherland v. McCall*,

709 F.2d 730, 732 (D.C.Cir.1983)). That is, a petitioner must show not only that the alleged error occurred, but also that he was prejudiced by the error. *Smith v. United States Parole Commission*, 875 F.2d 1361, 1368 (9th Cir. 1988) (stating, in context of habeas proceeding, that party claiming error in parole revocation hearing must demonstrate prejudice); *Benny v. U.S. Parole Com'n*, 295 F.3d 977 (9th Cir. 2002).

Evert admitted he received written notice of the claimed probation violations and the evidence against him and he had reviewed the petition and report of violation with his attorney in the September 9, 2010 hearing. Dkt. 16-18. He was given an opportunity to be heard and present evidence and witnesses at the November 17, 2010 hearing. Judge Lympus presided over that hearing and issued a written statement regarding the evidence he relied upon and the reasons for revoking Evert's sentence.

Although Evert contends state procedural law was not followed, all federal constitutional due process requirements were met. As such, Evert's claims regarding denial of a preliminary hearing within 72 hours of his detention, no notice of intent to revoke within ten days after that, not seeing a judge within 90 days, failure to follow state law standard procedures, not considering alternatives to imprisonment were not considered, that there were no violations, that his

9

probation officer "participated in the gathering of the evidence forming the basis of [the] revocation," that "things that happened over ten years ago" were used against him, and that he was "never given the opportunity to review the procedures or ask any kind of questions," fail as a matter of law.

### C. Ineffective Assistance of Counsel

To establish an ineffective assistance of counsel claim, Evert must show: (1) that counsel's performance was deficient; and (2) that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Ben–Sholom v. Ayers*, 674 F.3d 1095, 1100 (9th Cir. 2012).

"To establish deficient performance, a person challenging a conviction must show that counsel's representation fell below an objective standard of reasonableness." *Premo v. Moore*, 131 S.Ct. 733, 739 (2011) (internal citation and quotation marks omitted). We strongly presume "that counsel's representation was within the wide range of reasonable professional assistance." *Id.* To establish "prejudice," a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

Evert alleges his counsel was ineffective for not subpoenaing Flint, for not

raising the fact that he did not have a hearing within 72 hours, for failing to argue that there was nothing in the court judgment about viewing pornography, for allowing Haas to testify by telephone, and for failing to object to the hearsay testimony of his former girlfriend, Ms. Flint.

Several of these claims are frivolous. First, there has been no showing as to what Ms. Flint may or may not have said. In light of her letter attached to the report of revocation, it would not have been ineffective to not subpoena Ms. Flint to the revocation hearing. The Court has already addressed Evert's claims regarding the timeliness of his hearings and found that there has been no showing of prejudice regarding the timing of the revocation proceedings. Similarly, counsel was not ineffective regarding whether or not the viewing of pornography was included in the original judgment. It is clear from the transcript of the revocation proceeding that the requirement that Evert not view pornography was not a condition of his probation but was a recommendation of his sex offender evaluation. (Dkt. 16-27, pp. 7, 10: Revocation transcript, p. 19, lines 21-24; p. 29, lines 24-25, p. 30, lines 1-8). Finally, Evert waived Haas's presence at the revocation hearing. (Dkt. 16-25).

The failure to object to the alleged hearsay testimony of Mary Flint is a little more complicated. The Sixth Amendment's Confrontation Clause which gives

11

defendants the right to confront "testimonial witnesses" does not apply to revocation of supervised release proceedings. *United States v. Hall*, 419 F.3d 980, 985–86 (9th Cir. 2005). Instead, "a due process standard is used to determine whether hearsay evidence admitted during revocation proceedings violates a defendant's rights. *Id.* at 985.

Although the State argues that Evert did not specifically identify the offending statements entered in his revocation hearing, a review of the transcript of the revocation hearing reveals only two statements at issue. Ms. Haas testified that Ms. Flint, "reported to me that he was a very controlling man, and that he would tell her what she could wear, where she could go, who she could talk to. And sexually he also abused her." (Dkt. 16-27, p. 7: Revocation transcript, p. 18, lines 17-21). She also testified that, "His ex-girlfriend had told me that he would force her to watch pornographic movies so she could maybe learn how to perform these acts and to satisfy him." (Dkt. 16-27, p. 8: Revocation transcript, p. 20, lines 6-9). Although Evert's counsel objected to this testimony, the objection was made on the basis of relevance, not hearsay.

"Under *Morrissey*, every releasee is guaranteed the right to confront and cross-examine adverse witnesses at a revocation hearing, unless the government shows good cause for not producing the witnesses." *United States v. Comito*, 177

12

F.3d 1166, 1170 (9th Cir. 1999). To determine "whether the admission of hearsay evidence violates the releasee's right to confrontation in a particular case, the court must weigh the releasee's interest in his constitutionally guaranteed right to confrontation against the Government's good cause for denying it." *Id.* The Court must "assess the significance of the releasee's interest in the right to confrontation." *Id.* at 1171. "The weight to be given the right to confrontation . . . depends on two primary factors: the importance of the hearsay evidence to the court's ultimate finding and the nature of the facts to be proven by the hearsay evidence." *Id.*

Mary Flint's statements were introduced through the testimony of Janet Haas. There was no hearsay objection to Flint's statements and there was no showing of good cause for not producing Ms. Flint at the revocation hearing. Thus, the Court must consider the importance of the hearsay evidence to the ultimate finding and the nature of the facts to be proven by the hearsay evidence.

On collateral review of a state court criminal judgment under 28 U.S.C. § 2254, an error is harmless unless it had "a substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 631 (1993). The United States Supreme Court has clarified that "in § 2254 proceedings a federal court must assess the prejudicial impact of constitutional

error in a state-court criminal trial under the 'substantial and injurious effect' standard set forth in *Brecht* . . . , whether or not the state appellate court recognized the error and reviewed it for harmlessness . . . " *Fry v. Pliler*, 551 U.S. 112, 121–22 (2007).

This Court cannot say that the admission of Flint's testimony had "a substantial and injurious effect or influence" on the Court's decision to revoke and sentence Evert to 35 years in prison. At the revocation hearing, Evert admitted a number of violations including use of alcohol, leaving his assigned district without obtaining written permission from his probation officer, and failing to comply with state law in that he received citations for traffic violations while out of his district. (Dkt. 16-27, pp. 9-11: Revocation transcript).

Evert was originally charged with and convicted of sexual assault in violation of Mont. Code. Ann. § 45-5-502. Since his victim was less than 16 years old and he was more than three years older than the victim, Evert potentially faced life imprisonment at his original sentencing. Mont. Code. Ann. § 45-5-502(3). In handing down the 65 year sentence, Judge Lympus stated, "Defendant has had multiple felony convictions documented in the Pre-Sentence Report and has had extensive contact with the criminal justice system and probation which did nothing to prevent the commission of this most serious instant offense." (Dkt. 16-2:

14

Judgment and Sentence, p. 4). Judge Lympus also considered the effect of the crime on the 14-year-old victim and Evert's admission that he previously had sexual intercourse with his then 12 or 13-year-old daughter. In addition, Judge Lympus had allowed Evert to go to the Chemical Dependency Treatment Center in Butte, Montana in February 1997 but within 24 hours Evert walked away and was not apprehended until 30 days later when he was found in Washington without having contacted his attorney, the probation office, or the Court. (Dkt. 16-2: Judgment and Sentence, p. 4).

At the conclusion of the revocation hearing in November 2010, Judge Lympus made the following ruling:

> Having reviewed the file and the Report of Violation and considered the testimony - - that report and Officer Haas' testimony, frankly the Court has some real questions as to credibility with respect to Defendant concerning a number of things, including the allegation that the probation officer forged documents after the Defendant signed them, and also the denial on the part of Mr. Evert that he was abusive with his girlfriend, contrary to the allegations that she has made and made to the probation officer.

(Dkt. 16-27, pp. 12-13: Revocation transcript, p. 39, lines 19-25; p. 40, lines 1-5). In his written Order of Revocation, Judgment and Sentence, Judge Lympus indicated,

> In fashioning the following sentence, the Court has considered the testimony presented, the nature of the violations of probation

15

> conditions, the Defendant's criminal history, the Defendant's continued failure to take advantage of opportunities to better himself, the recommendations of the parties and the Report of Violation prepared by Janet Haas of the Adult Probation and Parole office.

(Dkt. 16-7, p. 3). Thus, Judge Lympus provided several reasons for his decision. While Judge Lympus may have been considered the hearsay statements of Mary Flint, it does not appear that her testimony had "a substantial and injurious effect or influence" on the Court's decision to revoke and sentence Evert to 35 years in prison.

Thus, even if counsel's performance was deficient for failing to object to the introduction of Ms. Flint's statements, Evert has not established that this prejudiced his defense or that it had a substantial and injurious effect on the outcome of the proceedings. Counsel's purported errors were harmless and are not a sufficient basis upon which to grant the petition for writ of habeas corpus.

### IV. Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2254 Proceedings. A COA should issue as to those claims on which the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the

district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (*citing Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Here, jurists of reason would not find debatable whether Evert has made a substantial showing of the denial of a constitutional right.

Based on the foregoing, the Court enters the following:

## ORDER

1. The Petition (Dkt. 1) is DENIED.

2. The Clerk of Court is directed to enter by separate document a judgment in favor of Respondents and against Petitioner.

3. A certificate of appealability is DENIED.

Dated this 14th day of March, 2013.

Jeremiah C. Lynch
United States Magistrate Judge